**In re COMBUSTION, INC.**

**Civil Action No. 94MDL4000.**

United States District Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

Sept. 18, 1997.

HAIK, District Judge.

## RULING

On August 15 and 18, 19 and 22, 1997, this Court conducted a hearing ("Hearing") that represented the culmination of more than five month's work by the Special Master and his staff, the Plaintiff Steering Committee (PSC), and this Court toward the ultimate goal of disbursing funds to the Claimants. The purpose of the Hearing was to consider the recommendations of the Special Master and the Court-appointed-disbursing-agent, ("CADA"), regarding the allocation process and Claimant allocation schedule, to consider individual objections, and in general, to clear the last major hurdle in the long-awaited disbursement of funds.

For the reasons stated below, the Court adopts the *Report of the Special Master RE: Combustion Litigation Claims Allocation Methodology* of June 26, 1997 as amended July 3, 1997, ("Report I"), the Special Master's *Report Regarding Prehearing Conferences,* ("Report II"), and the amended Claimant allocation schedule submitted under seal as CADA # 3.

Each Claimant who elected to maintain his objection after consideration by the Special Master and then by the Court at the Hearing was issued an individual *Final Judgment,* entered by the Clerk of Court at that time. By the *Final Judgment* issued in conjunction with this *Ruling,* the Court dismisses all objections by Claimants who timely filed but failed to appear at both the Special Master's conferences and before the Court at the Hearing, (exhibit PSC–70), by claimants who filed timely objections and appeared before the Court but did not show just cause for failing to follow the Special Master's protocol and failing to appear at the Special Master's conferences, (exhibit PSC–71), by Claimants who maintained their objections after the Special Master's conferences but who failed to appear at the Hearing, (exhibit PSC–72), and by Claimants who failed to timely object but who appeared at the Hearing and did not show just cause for such derelict behavior, (PSC–69). Finally, the Court dismisses all other claims asserted by Class members who appeared at the Hearing.

## Background

The partial distribution process began in March of this year when the Court ordered the Special Master to write and submit a report "as to the nature and amount of any and all maximum reserves to be established in order to determine the amount of the Claimants' Fund available for partial distribution." The Court also ordered that notice be sent to the Claimants regarding the report and that a hearing be set for April 18, 1997 to consider the recommendations of the Special Master. *See Order for Implementation of Partial Distribution Process,* doc. # 7072, March 7, 1997; *Important Notice of Hearing,* doc. # 7073, March 7, 1997.

After the April 18, 1997 evidentiary hearing, the Court issued extensive reasons adopting the Special Master's report and or-

dering him to proceed with his work toward disbursement. *See Ruling,* doc. # 7148, June 4, 1997; *Final Judgment,* doc. # 7049, June 4, 1997.

Accordingly, the Special Master enlisted a staff of attorneys and a medical expert board certified in pathology and internal medicine to assist evaluating all the reports of the medical and toxological experts filed in this case, *attachment 1,* and in reviewing each Claimant's file, including all medical records and property claims. Only after an exhaustive review of the information available to him did the Special Master recommend to the Court a methodology upon which individual allocations were based and a schedule of the individual allocation for each Claimant. *See Report I.* Report I was amended by Motion of July 3, 1997 because of clerical error, but the amendment did not affect the allocation schedule. The Court gave preliminarily approval to Report I by *Order,* June 25, 1997, (filed June 26, 1997). The allocation schedule was filed under seal.

### Methodology

The cornerstones of the Special Master's methodology were exposure and medical problems. Using expert reports and the state court's geographical class definition, the Special Master determined that the site had no impact on people living beyond 3 miles from a center point lying between two portions of the site. Thus, personal injury recovery was limited exclusively to Claimants who lived, worked, or attended school within the 3 mile radius. Enhancement factors were proximity, duration, and degree of lethal activity at the site during the Claimant's time within the creditable radius. Once a Claimant's exposure points were calculated, each point was valued at $3.00, with the product yielding a total exposure award.

To this award was added the compensation for medical problems determined by the medical expert to be associated with the site. The expert evaluated and classified each Claimant's medical problem by studying the symptoms, the age of the Claimant, and the date of diagnosis. Enhancing factors included the nature and severity of the condition, the probability of a causal link to the site. the relationship of the medical claims to each other, and the effect on the life of the Claimant. Categories A, B, C, and D classified diseases or clinical courses according to severity from "unusual or unexpected major diseases and/or clinical courses" to "chronic effects to include birth defects and deformities." *Report II,* p. 11–13. Other categories were used simply as a formality, but only these four classifications earned dollar credits.

The maximum awards for these four categories ranged from $1,000,000 to $15,000. After it was determined that a claimant belonged in category A, for example, that Claimant's maximum possible medical award was tapered to fit his actual circumstance.

First, the Special Master set up four "rejection of medical claim" categories. Medical claims were not allowed for Claimants who were diagnosed prior to January 1, 1968, or who moved from the site prior to January 1, 1968, or who were diagnosed after moving outside the 3 mile radius.

Causation was factored into the medical award for the claims that survived the rejection threshold. The actual medical award was the product of the maximum dollar amount for that Claimant's illness category and the ratio of that Claimant's actual exposure points to his maximum possible exposure points calculated as if he had lived at the site throughout all relevant time beginning with his date of birth. The sum of the medical award and the exposure point award was each Claimant's personal injury allocation.

Minimum compensation awards ranging from $250—$20,000 were allotted to Claimants whose exposure points fell into one of six categories but whose corresponding total allocation was lower than the corresponding minimum amount set by the Special Master. *See Report I,* at p. "substituted 10". As a baseline rule, an allocation of $250 was allotted to the Claimants who lived outside the three mile radius and never attended school or worked within the radius and who had no other creditable exposure or property damage but who participated in the Class action as instructed by the many newsletters and legal notices.

Property damage was determined in increments of one-quarter mile from the site up to one mile from the site. The dollar amount was based on the Assessor's rolls for Claimants who owned the property when the suit was filed in July 1986. Reimbursement ranged from 100% to 25% of "actual value," calculated to be greater that the assessed value by the factor of ten.

Other categories were compensated. Business losses were considered on a case by case basis because of the relatively few claims of this nature. Compensation to class representatives, bellwether plaintiffs, and other claimants who participated in depositions, medical examinations, and generally contributed to the development of the case was awarded because of the extra time and effort and work of these Claimants during the course of the law suit.

In addition to individual awards to the Claimants, the Special Master also recommended establishing a medical monitoring fund for annual medical check-ups, including blood work, for five years free of charge to the Class members. He recommended $1.5 million for this service. This service had been requested by claimants in letters to the Court in conjunction with the April 18, 1997 hearing. Finally, the Special Master reported the intervention by the State of Louisiana asserting liens for recovery of medical and related expenses incurred by the State hospital facilities.

### Protocol

On June 26, 1997, the Court gave preliminary approval to Report I and allocation schedule and ordered a hearing pursuant to Federal Rule of Civil Procedure, (FRCP), 23(e). *See Report I; Order*, doc. # 7180, June 26, 1997; *Important Notice of Hearing*, doc. # 7178, June 26, 1997. The individual allocation letters and the *Important Notice of Hearing* were mailed to each Claimant beginning June 26, 1997. Incorporated in the *Important Notice of Hearing* was the procedure that dissatisfied Claimants were ordered to follow to object to their allocations. The notice also included the methodology to be used by the Special Master and his staff to review each objection. *Important Notice of Hearing*, at p. 3–5. The Report of the

Special Master was made available for inspection at the Special Master's office and the Clerk of Court in Livingston Parish, and for inspection and duplication at the Joint Document Depository.

Each objector was instructed to file by hand, U.S. mail, or fax his written objection by midnight July 21, 1997, an equitable extension to the FRCP 53(d)(2) ten-day deadline. Objectors were expressly instructed that they "must respond [to any communication from the Special Master] as directed ..." regarding their objection. And "[if the Claimant fails] to comply with any of the above requirements, [the Claimant's] objection will not be considered and will be overruled by the Court." *Important Notice of Hearing*, at p. 4, June 26, 1997.

Approximately 1600 objections were received timely. Each objector's file was studied and re-evaluated. The Special Master scheduled individual appointments for every objector and notified each one of the appointment in writing and by phone. Each objector was encouraged to submit additional records in support of his objection even though the Court-ordered deadline for supplementing records was November 15, 1996. *See Order*, October 15, 1996, *(attachment 2)*.

For eleven days, beginning July 29 through August 12, 1997, the Special Master and his staff held individual conferences with each objector who appeared in person, beginning at 8:00 a.m. and continuing until 9:00 or 10:00 p.m., in an effort to satisfy each Claimant's concerns. The court-appointed medical expert was available at all times, either by phone and fax or personally, to evaluate additional medical records submitted by the objectors. All parties were placed under oath, and transcriptions of all conferences with the Special Master were filed into the record under seal at the Hearing.

More than $1 million dollars in adjustments were made as a result of the conferences. Claimants who were satisfied with the adjustments signed written statements withdrawing their objections. Claimants who maintained their objections were scheduled to appear at the Hearing and encour-

aged to bring additional documentation to support their positions.

On August 14, the Special Master presented to the Court the *Report II* along with the consultation reports of the Court-appointed physician. The Special Master also presented an amended allocation schedule incorporating the adjustments resulting from the prehearing conferences.

### Court Hearing

Claimant's who maintained their objections, including several who received upward adjustments but wished to present their case in Court, appeared at the Hearing. For each objection presented, the Court read and reviewed that objector's complete file, the transcript of his conference with the Special Master, and an additional evaluation of the claimant's medical records provided by the court-appointed physician. The objector was given another opportunity to present to the Court additional evidence not presented to the Special Master.

As each Claimant appeared and after consideration of additional evidence introduced to the Court by the Claimant, the Special Master presented his revised recommendation. The Court then ruled on each objection from the bench. Those objectors who maintained their objections after the ruling by the Court were issued Final Judgments pursuant to FRCP 54(b). *See attachments 3–1, 3–2, 3–3, 3–4.* The individual Judgments were entered by the Clerk of Court on the dates they were issued.

In addition, Claimants who had not complied with the objection process but appeared at the Hearing and presented to the Court just cause for not complying with the Special Master's protocol were allowed to present their objections to the Special Master or an attorney on his staff and proceed through the same process at that time. The Court was also provided complete files for these claimants. Those Claimants who did not withdraw their objections after meeting with the Special Master and appearing before the Court were issued Final Judgments.

Claimants who failed to show just cause for not following the Special Master's objection protocol were dismissed with prejudice

as were persons who appeared but who had not filed proof of claim forms, a matter already concluded by the Court in September 26–29, 1995. (*See Written Reasons,* February 7, 1996, doc. # 4160, *Final Judgment,* February 7, 1996, doc. # 4149).

A total of $1.6 million in adjustments was made as a result of this extraordinary effort by the Special Master and his staff and by the Claimants. These adjustments reflect errors in data entry as well as additional credit for new medical records indicating a more serious category of disease than previously shown in the Claimant's file. After considering almost 1,800 objections, the Court issued only sixty-three (63) Final Judgments, less than 4% of the original number filed.

### Analysis

A district court shall accept the report of a master unless clearly erroneous. F.R.C.P. 53(e)(2). This Court finds no clear error in either of the reports submitted by the Special Master.

As repeatedly stressed by the Special Master in the conferences and in Court, the thesis of his methodology was fairness and parity to the Class as a whole, "an imperative consideration in a case of this kind." *Report of the Special Master RE Combustion Class Action Litigation Claims Allocation Methodology,* at p. 2. The Court whole-heartedly agrees and applauds the tireless efforts of the Special Master and his staff for holding firm to the equity touchstone of the distribution model and for taking the time to explain the methodology to every single objector who attended a conference.

The Court now focuses on several key findings made by the Special Master, as these determinations form the cornerstones of the Special Master's methodology. First is his determination that claims recovery should be limited to a radius of 3 miles from the site. This conclusion was based on his knowledge of the case through the tens if not several hundred settlement conferences he conducted, through the exhaustive review he made of the reports of the plaintiffs' and defendants' medical and toxicological experts,

and through the extensive consultations he had with the court-appointed physician.

Further, the Court has not received credible evidence to the contrary. The class territory was initially defined to extend to 2.5 miles from the center of the site, though on remand the state court judge included the entire Parish of Livingston. This original effort coupled with the Special Master's experience led him to conclude that the impact of the site beyond 3 miles was *de minimis,* except possibly the fear and fright of harmful effects from the site. *See exhibit DH–33–1, Report of Donald Rosebrook, Ph.D., Re: Scoring System for A location of Plaintiffs' Award* (expert for Plaintiffs).

However, in keeping with equitable considerations, the Special Master set a minimum award of $250 for Class member who filed a valid proof of claim but who had no creditable exposure within the 3 mile radius. The purpose of this award was to account for considerations such as inconvenience, fear, fright, and medical conditions of these Claimants.

The Court will not repeat the lengthy analysis on causation set out in the *Ruling* of June 4, 1997, except to state that establishing a causal link between the chemicals at the site and the various personal injury claims alleged by Class members was the acknowledged Achilles Heel of the Plaintiffs' case. Defendants' experts concluded that harmful exposure, if any, expended only a matter of yards from the site. At least one site worker testified at the August 15 hearing that the extent of his medical problems was a collapsed lung, determined not to be related to chemicals at the site. *See Transcript of August 15 hearing, testimony of Mark Bernhard, p. 623.* The Court finds no clear error with the 3–mile radius determination or with the $250 minimum award for Claimant's having no other creditable points.

Next, the Special Master credited only residency, employment, and schooling within the three mile radius and did not allow double recovery. Notably omitted were those claims based on time spent hunting, fishing, and otherwise visiting within the creditable radius. The Special Master found that the transient nature of these types of visits created too much variation and uncertainty as to sufficiency of damaging exposure. The Court finds no clear error in this determination.

The Special Master also found that no credit would be given for lost wages or medical expenses. This latter decision was based on the extreme subjectivity and difficulty with proof that chemical exposure caused a missed day of work during the time period from 1968–1994. In addition, almost every Claimant listed medical expenses in the proof of claim form. The Special Master determined that reimbursement of these expenses together with the expense required to verify each claim would itself exhaust the Claimant's fund. Therefore, the decision to eliminate recovery for medical expenses was due to the limited amount of time, personal, and funds available. Furthermore, as stated in the Report I, inclusion of these expenses as a consideration distinct from the exposure point considerations "would skew the allocation in such a way that would be generally unsatisfactory to the large majority of persons involved." *Report I,* p. 13–14. The Court finds no clear error in this decision.

The remaining findings of the Special Master regarding allocations for property claims, class representative participation and other incentive awards, and business loss appear to be well reasoned in the *Report I,* and the Court finds no clear error with those findings.

The Special Master's recommendation that $1.5 million be set aside for medical monitoring to Class members free of charge for five years has been requested by Claimants and is wholeheartedly supported by the Court. *See Ruling* and *Final Judgment,* June 4, 1997. This service will include annual physical examinations and connected laboratory work.

As reported by the Special Master, the State of Louisiana has intervened in these proceedings, asserting liens for recovery of medical and related expenses incurred by the State through the Department of Health and Hospitals, all State Hospital facilities, and Louisiana medicaid participants. The Special Master reports that the State negotiated

a payment of $1.2 million with possible enhancement of up to $300 thousand, at the discretion of the Court, after other expenses and costs are paid. The Court finds no clear error in the Special Master's recommendation to accept this compromise.

Finally, the Special Master set aside a portion of the Claimants' Fund to account for adjustments made during this entire allocation process. From this pool was drawn the funding for the $1.6 million increases in allocations made as a result of the objection process. This safety mechanism is prudent accounting, is fair to the Class as a whole, and the Court finds no clear error in this recommendation.

### Conclusion

For the reasons stated above, the Court adopts the *Report of the Special Master RE: Combustion Litigation Claims Allocation Methodology* of June 26, 1997 as amended July 3, 1997, the Special Master's *Report Regarding Prehearing Conferences,* and the amended Claimant allocation schedule recommended by the Special Master and submitted by CADA. The Court dismisses all objections by Claimants who timely filed but failed to appear at both the Special Master's conferences and before the Court at the Hearing, by Claimants who filed timely objections and appeared before the Court but did not show just cause for failing to follow the Special Master's protocol and failing to appear at the Special Master's conferences, by Claimants who maintained their objections after the Special Master's conferences but who failed to appear at the Hearing, and by Claimants who failed to timely object but who appeared at the Hearing and did not show just cause for failure to timely object. Finally, the Court dismisses all other claims asserted by Class members who appeared at the Hearing.

### Exhibit "A"
### EXPERTS

| Name | Area of Expertise |
| --- | --- |
| 1) James W. Albers, M.D., Ph.D. | Neurology |
| 2) William C. Bailey, M.D. | General Medicine/ Pulmonary Disease |
| 3) Elissa P. Benedek, M.D. | Psychiatry |
| 4) Stanley Berent, Ph.D. | Neuropsychology |
| 5) William J. Blot, Ph.D. | Statistics/Epidemiology |
| 6) Thomas J. Boll, Ph.D. | Gynecology/Oncology |
| 7) Patricia S. Braly, M.D. | Epidemiology |
| 8) Patricia Buffler, Ph.D., M.P.H. | Epidemiology |
| 9) Harris Busch, M.D., Ph.D. | Pharmacology |
| 10) Norman Carnahan | Chemical Engineering |
| 11) David Drachmann, M.D. | Neurologist |
| 12) Patrick J. Egan, C.R.E. Paula Claverie Hogan, M.A.I. | Real Estate |
| 13) Bruce J. Fisch, M.D. | Electrocephalography/Neurology |
| 14) David L. Ford, Ph.D., P.E. | Environmental Engineering |
| 15) Harold A. Fuselier, Jr., M.D. | Urology |
| 16) David Garabrant, M.D., M.P.H. | Epidemiologist |
| 17) Wayne Grip | Aerial Photographer |
| 18) Philip S. Guzelian, M.D. | Toxicology |
| 19) Gale F. Hoffnagle | Air Modeling |
| 20) Dr. Raymond Loehr | Superfund Site |
| 21) Charles Nemeroff, M.D., M.P.H. | Psychiatry/Behavioral Sciences |
| 22) Philip T. Ninan, M.D. | Psychiatry |
| 23) Dr. Edward Beardslee Overton | Environmental Engineer |
| 24) Michael Pisani, P.E. | Environmental Engineer |
| 25) Wade R. Ragas, Ph.D. | Real Estate |
| 26) Neil H. Raskin, M.D. | Psychiatry |
| 27) John H. Rodgers, Jr. | Biology/Water |
| 28) John E. Salvaggio, M.D. | Immunology |

| Name | Area of Expertise |
|---|---|
| 29) Peter S. Spencer, Ph.D., F.R.C. | Path. Neurologist |
| 30) Peter M. Stonebraker | Chemistry |
| 31) Austin J. Sumner, M.D. | Neurology |
| 32) Louis Joseph Thibodeaux, Ph.D. | Chemical Engineering |
| 33) Daninel K. Winstead, M.D. | Psychiatry |
| 34) Donald D. Rosebrook, Ph.D. | Environmental Chemistry |
| 35) Larry Bankston | General Real Estate Appraiser |
| 36) Dr. Isaiah Warner | Environmental Chemistry |
| 37) Dr. John Bolter | Neuropsychology |
| 38) Dr. Patricia M. Williams | Anatomy/Occupational Toxicology |
| 39) Dr. Richard A. Parent | Toxicology |
| 40) Dr. Frank Gardner | Hematology and Oncology |
| 41) Karl Dicke, M.D., Ph.D. | Hematology and Oncology |
| 42) Stanton Coerr | Air Modeling |
| 43) Dr. George Worm | Statistician |
| 44) Alan R. Hirsch, M.D., F.A.C.P. | Neurology |
| 45) Dr. Norman Lewis | Chemical Engineering |
| 46) Lisa A. Morrow, Ph.D. | Neurology |
| 47) Christopher M. Ryan, Ph.D. | Neurology |
| 48) Marvin Legator, Ph.D. | Environmental Toxicology |
| 49) Dr. Ed Ekholm | Chemical Engineering |
| 50) Myron A. Mehlman, Ph.D. | Toxicology |
| 51) Dr. Kaye Kilburn(Deposition) | Environmental Medicine |
| 52) Alex Theriot, Jr. | Appraiser |
| 53) Harlee S. Strauss, Ph.D. | Risk Assessment |

ATTACHMENT 2

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
F I L E D

OCT 1 6 1996

ROBERT H. SHEMWELL, CLERK
BY_____
DEPUTY

IN RE COMBUSTION, INC.

ACTION NO. 94MDLA000
ALL CASES

JUDGE HAIK

MAGISTRATE JUDGE TYNES

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

ORDER

To facilitate evaluation of the claims of class members who have filed proofs of claim in accordance with the prior orders of the Court, it is hereby ORDERED that no supplements or amendments to proofs of claim shall be permitted as of midnight November 15, 1996.

This _15th_ day of _October_ 1996, Lafayette, Louisiana.

_____
HONORABLE RICHARD T. HAIK
JUDGE, U.S.D.C.W.D. LA

## ATTACHMENT 3-1

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE-OPELOUSAS DIVISION**

U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
FILED

**AUG 1 9 1997**

ROBERT H. SHUWELL CLERK
BY_____
DEPUTY

IN RE: COMBUSTION, INC.

ACTION NO. 94MDL4000
**ALL CASES**

**JUDGE HAIK**

*Sample*

**JUDGMENT**

For the reasons stated in open Court this date, the Court rules

that the objection on behalf of ▨▨▨▨▨▨▨▨▨▨▨

to the Report of Special Master Re: Combustion Action Litigation Claims

Allocation Methodology (Doc. #7176) and to said objector's proposed

allocation as set forth in the Schedule of Allocations filed therewith

is GRANTED to the extent that said objector's allocation is increased

to the total sum of $ **75,968.00**; otherwise, objector's objection in

all other respects is DENIED.

The Court further finds that there is no just reason for delay
to the Report of Special Master Re: Combustion Action Litigation Claims
and in accordance with Fed. R. Civ. Pro. 54(b) directs immediate entry
of this judgment as a FINAL JUDGMENT.

Signed at Baton Rouge, Louisiana, August 19, 1997.

Richard T. Haik
United States District Judge

A copy of the above judgment was personally received by me on
August 19, 1997.

By: _____▨▨▨▨▨▨_____

Name of Representative (if applicable):

▨▨▨▨▨▨_____

File No.: 3348-1

Relationship: ▨▨▨_____

Judgment Entered: 08/19/1997

ATTACHMENT 3-2

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE-OPELOUSAS DIVISION**

U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
FILED

AUG 1 5 1997

ROBERT H. SHEMWELL, CLERK
BY_____ DEPUTY

IN RE: COMBUSTION, INC.

ACTION NO. 94MDL4000
ALL CASES

JUDGE HAIK

*Sample*

JUDGMENT

For the reasons stated in open Court this date, the Court rules that the objection of ▓▓▓▓▓▓ to the Report of Special Master Re: Combustion Action Litigation Claims Allocation Methodology (Doc. #7176) and to said objector's proposed allocation as set forth in the Schedule of Allocations filed therewith is DENIED. The Court further finds, for reasons stated in open Court, that the objection filed by objector is frivolous and hereby imposes a sanction of $ **250.00**, thereby reducing objector's poposed allocation to $ **0.00** .

The Court further finds that there is no just reason for delay and in accordance with Fed. R. Civ. Pro. 54(b) directs immediate entry of this judgment as a FINAL JUDGMENT.

Signed at Baton Rouge, Louisiana, August 15, 1997.

Richard T. Haik
United States District Judge

A copy of the above judgment was personally received by me on August 15, 1997.

By: _____
Name of Representative (if applicable):

File No.: 4419-1

Relationship: _____

## ATTACHMENT 3-3
### UNITED STATES DISTRICT COURT

### WESTERN DISTRICT OF LOUISIANA

### LAFAYETTE-OPELOUSAS DIVISION

U.S DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
FILED

**AUG 15 1997**

ROBERT H. SHUWELL, CLERK
BY _____

IN RE: COMBUSTION, INC.

ACTION NO. 94MDL4000
ALL CASES

*Sample*

JUDGE HAIK

### JUDGMENT

For the reasons stated in open Court this date, the Court rules that the objection of ~~~~ to the Report of Special Master Re: Combustion Action Litigation Claims Allocation Methodology (Doc. #7176) and to said objector's proposed allocation as set forth in the Schedule of Allocations filed therewith is DENIED and the recomendation of the Special Master that said objector's allocation be fixed in the sum of $ **1,500.00** is AFFIRMED.

The Court further finds that there is no just reason for delay and in accordance with Fed. R. Civ. Pro. 54(b) directs immediate entry of this judgment as a FINAL JUDGMENT.

Signed at Baton Rouge, Louisiana, August 15, 1997.

Richard T. Haik
United States District Judge

A copy of the above judgment was personally received by me on August 15, 1997.

By: _____

Name of Representative (if applicable):

_____

File No.: 385-1

Relationship: _____

## ATTACHMENT 3-4

### UNITED STATES DISTRICT COURT

### WESTERN DISTRICT OF LOUISIANA

U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
FILED

### LAFAYETTE-OPELOUSAS DIVISION

AUG 1 5 1997

ROBERT H. SHEMWELL, CLERK
BY_____

IN RE: COMBUSTION, INC.

ACTION NO. 94MDL4000
ALL CASES

*Sample*

JUDGE HAIK

### JUDGMENT

For the reasons stated in open Court this date, the Court rules that the objection on behalf of ~~[redacted]~~ to the Report of Special Master Re: Combustion Action Litigation Claims Allocation Methodology (Doc. #7176) and to said objector's proposed allocation as set forth in the Schedule of Allocations filed therewith is DENIED and the recomendation of the Special Master that said objector's allocation be fixed in the sum of $ **1,500.00** is AFFIRMED.

The Court further finds that there is no just reason for delay and in accordance with Fed. R. Civ. Pro. 54(b) directs immediate entry of this judgment as a FINAL JUDGMENT.

Signed at Baton Rouge, Louisiana, August 15, 1997.

Richard T. Haik
United States District Judge

A copy of the above judgment was personally received by me on August 15, 1997.

By: _____

Name of Representative (if applicable):
_____

File No.: 1513-7

Relationship: _____

### FINAL JUDGMENT

Considering the foregoing *Ruling* and for oral reasons given by the Court in the course of and at the conclusion of the Hearing;

THE COURT HEREBY ADOPTS the *Report of the Special Master Re: Combustion Class Action Litigation Claims Allocation Methodology* and amended Schedule of Allocations, (CADA# 3), and the *Report of the Special Master Regarding Prehearing Conferences;*

IT IS ORDERED, ADJUDGED, AND DECREED that all objections asserted by Claimants who timely filed but failed to ap-

pear at both the Special Master's conferences and before the Court at the Hearing, (exhibit PSC–70), by Claimants who filed timely objections and appeared before the Court but did not show just cause for failing to follow the Special Master's protocol and failing to appear at the Special Master's conferences, (exhibit PSC–71), by Claimants who maintained their objections after the Special Master's conferences but who failed to appear at the Hearing, (exhibit PSC–72), and by Claimants who failed to timely object but who appeared at the Hearing and did not show just cause for failure to timely object, (PSC–69), are OVERRULED and DENIED.

IT IS FURTHER ORDERED that all other claims asserted by Class members who appeared at the Hearing are hereby DENIED;

IT IS FURTHER ORDERED that to the extent that the Court has not issued a Final Judgment pursuant to FRCP 54(b) on any motion or application to add or reinstate persons to the group of persons qualified to participate in the allocation of settlement funds, any such motion or application is hereby DENIED, and the identification of class members to receive allocations from the Claimants' Fund is hereby restricted to the persons named in the Revised Schedule of Allocations, CADA # 3, adopted in this Judgment;

IT IS FURTHER ORDERED that the claims of persons not previously dismissed who are included within this Court's definition of the Class and who did not timely exclude themselves from the class action but whose names are not on the Revised Schedule of Allocations, CADA # 3, are hereby DISMISSED WITH PREJUDICE;

IT IS FURTHER ORDERED that any and all distributions from the Claimants' Fund to persons incapacitated under Louisiana law to act for themselves, including minors, interdicts, successions or absentees, are to be preserved for the benefit of such incapacitated persons in bank accounts to be established and maintained pursuant to orders of this Court in the course of the distribution process;

IT IS FURTHER ORDERED that pursuant to the provisions of FRCP 54(b), the Court finds that there is no just reason for delay in enforcement of this judgment and, accordingly, directs the Clerk to enter this Judgment and mail a copy with notice to the Plaintiffs' Steering Committee, as counsel for the Class, and to counsel for all Claimants who are represented by private counsel. The Plaintiffs' Steering Committee is directed to send a copy of this Final Judgment to all Class members who filed objections in response to the Important Notice of Hearing (Distribution) and to file its certificate of compliance accordingly;

IT IS FURTHER ORDERED that the Court shall retain jurisdiction over this action in all respects, including any matters necessary to enforce the terms and conditions of the settlements and allocations approved thus far, and that this retention of jurisdiction shall not affect the finality of this Judgment.